IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 22, 2002 Session

## STEVEN ROBERT WILLIAMS v. MARGARET SIMPSON WILLIAMS

**Direct Appeal from the Circuit Court for Shelby County**
**No. 160216 R.D.      D'Army Bailey, Judge**

---

**No. W2001-00101-COA-R3-CV - Filed June 20, 2002**

---

This appeal arises from a divorce action. We are asked to review the trial court's award of child custody, rehabilitative alimony and attorney's fees to the wife. We affirm. We additionally award wife reasonable attorney's fees incurred in this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Robert M. Brannon, Jr. and Timothy J. Francavilla, Memphis, Tennessee, for the appellant, Steven Robert Williams.

LeeAnn Pafford Dobson, Germantown, Tennessee, for the appellee, Margaret Simpson Williams.

## OPINION

The parties were married on August 16, 1980. They have two minor children, a son born in 1986 and a daughter born in 1990. Both of the parties are college graduates. Mr. Williams has a degree in political science and a Master's degree in instructional design and technology education. Mrs. Williams has a degree in interior design. Mr. Williams served in the military from 1980 until 1993, attaining the rank of major and serving in Central America and the Persian Gulf. He sustained injuries while in the military which eventually resulted in the amputation of a knee cap in 1998. He also has suffered damage to his sciatic nerve and hearing loss. After leaving the military, Mr. Williams held positions with Autozone and then Time Warner, where he earned $58,000 per year. At the time of the divorce, Mr. Williams was employed by M.S. Carriers at a yearly salary of $50,000. Mrs. Williams worked only sporadically during the marriage and never in the field of interior design. Her primary role in the marriage was to care for the home and children. At the time of the divorce, Mrs. Williams was earning $12,214.47 as an educational assistant in the public school system and pursuing a teaching certificate.

Mr. Williams, appellant, filed a complaint for divorce on August 26, 1998. Mrs. Williams filed an answer and counter complaint in December of 1998. The parties stipulated that there were grounds for divorce. During the course of the marriage, Mr. Williams engaged in extra-marital affairs which resulted in Mrs. Williams contracting a sexually transmitted disease.

During the pendency of proceedings, four hearings were held on issues of child support and alimony. An additional hearing was held in April of 1999 concerning Mr. Williams' motion for mental evaluation of the appellee and petition for temporary and permanent child custody, and Mrs. Williams' motion for mental evaluation of the family. On May 14, 1999, the court ordered a psychological evaluation of the family to assist with determinations of child custody. The parties subsequently stipulated to the psychological evaluations performed by Dr. John Ciocca, a clinical psychologist.

Following a four day trial, the trial court entered a final decree of divorce on December 5, 2000. Child custody was awarded to Mrs. Williams. Mr. Williams was awarded visitation Tuesday evenings from 6-8 p.m., every other weekend, and four to five weeks during the summer. Mr. Williams was ordered to pay child support of $1,098.68 per month, rehabilitative alimony of $750.00 per month for five years, and $7,500.00 of Mrs. Williams' attorney's fees. Mr. Williams' motion to stay execution pending appeal was denied following a hearing on January 12, 2001.

### *Issues Presented*

Mr. Williams raises the following issues for our review:

(1) Did the trial court err by failing to grant appellant's request for primary custody and/or joint custody?

(2) Did the trial court err by awarding an excessive amount of alimony?

(3) Did the trial court err by ordering appellant to pay a portion of appellee's attorney's fees?

Mrs. Williams asks this Court to award additional attorney's fees for services rendered in connection with this appeal.

### *Standard of Review*

Appellate review of the trial court's findings of fact is ***de novo*** with a presumption of correctness. Tenn. R. App. P. 13(d); ***see, e.g., Berryhill v. Rhodes***, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. ***Id***. Our review of the trial court's conclusions on matters of law is ***de novo***, with no presumption of correctness. ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000). Our ***de novo*** review is tempered, however, by appreciation of the fact that the trial court is in the best

position to assess the credibility of the witnesses. *See Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). These determinations are afforded great weight on appeal. *Id.* We will not reverse the trial court on issues regarding the credibility of witnesses unless there is clear and convincing evidence to the contrary. *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996).

Mr. Williams argues that the presumption of correctness for the findings of the trial court should not apply in this case because the trial court abused its discretion by summarily ruling on issues of alimony, attorney's fees and child custody prior to any hearing on the evidence. He argues that the differences between the statements made by the court regarding these issues prior to hearing the evidence at trial and the ruling set forth in the final decree are so nominal as to amount to a prejudgment, and thus negate the presumption of correctness upon appeal. Upon review of the entire record in this case, we find no such prejudgment and see no reason to depart from the standard of review ordinarily employed for child custody and alimony determinations.

We review matters of child custody and alimony under an abuse of discretion standard. If the discretionary decision is within a range of acceptable alternatives, appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. *White v. Vanderbilt University*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). We review the trial court's discretionary decisions to determine: (1) whether the decisions are supported by the facts in evidence; (2) whether the trial court identified and applied the applicable legal principles; (3) whether the trial court's decisions are within the range of acceptable alternatives. *Id.*

### *Child Custody*

The courts consistently have emphasized that the welfare and needs of the children are the paramount concerns in the determination of child custody. *See, e.g., Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999); *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). In making its custody determination, the trial court must engage in a comparative fitness analysis of the parents. *Parker*, 986 S.W.2d at 562 (citing *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996)). In so doing, it must consider the factors outlined by the legislature as codified at Tenn. Code Ann. § 36-6-106.[1] *Id.* Custody determinations are thus based on a combination of subtle factors, and

---

[1] The statute provides that the trial court must consider:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. . . .

(continued...)

require a factually based inquiry. *See id.* Although not determinative, maintaining stability and continuity in the children's lives has continually been an important consideration in this inquiry. *Gaskill*, 936 S.W.2d at 630. The trial court is in the best position to weigh the facts presented to it, and to assess the credibility of the parties. *Id* at 631. A trial court's child custody determination is thus given wide discretion and we will not interfere with that determination unless the evidence clearly preponderates against the court's findings. *Parker,* 986 S.W.2d at 563.

Mr. Williams contends on appeal that the trial court failed to consider the best interests of the children and therefore abused its discretion in awarding sole custody to Mrs. Williams. He submits that he has attempted to support the children's relationship with their mother, while she has attempted to disrupt their relationship with him. He directs us to Dr. Ciocca's report, which contains findings that Mrs. Williams has spoken negatively about him in front of the children, exhibiting anger which she found difficult to control. Mr. Williams submits that the trial court awarded custody to Mrs. Williams despite its recognition of the harmful effects on her children of her anger toward and disparagement of Mr. Williams. He argues that granting custody to Mrs. Williams removes any possibility that he will have input into the children's lives.

Upon review of the all evidence, including the report of Dr. Ciocca, we are satisfied that the trial court did not abuse its discretion in this case. The trial court was in the best position to assess the parties during the four day trial of this case. The trial transcript reveals that the trial court considered the totality of the evidence before it, including its direct assessment of the Williams family and Dr. Ciocca's evaluation and recommendations, in making its determination. The trial court noted that both parents had at times exercised poor judgment regarding their behavior in front of their children, but stated, "I believe frankly her (Mrs. Williams') testimony and that probably the problems he's (Mr. Williams) got with the children in view of what I've seen in Dr. Ciocca's report have more to do with him than with her. I don't think she's the architect of those problems that he's got with the children. And I think he's the one that's going to have to work on that." Dr. Ciocca's report confirms that Mrs. Williams has been the primary care-taker of the children, and that her role was accentuated by Mr. Williams' extended absences while in the military. It further confirms that the children's primary attachment has been to their mother, and that they have expressed a preference to continue living with her. Dr. Ciocca concluded that the children view their mother as their "source of nurturance and security," and that they "express extensive confidence in the parenting decisions and ability of their mother." As Dr. Ciocca notes, the Williams children undoubtedly have

[1](...continued)

> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . . .
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
>
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (2001).

been exposed to the anger and animosity between their parents. These feelings appear to have festered in a declining marriage over an extended period of time. We join the trial court in urging the Williams to heed Dr. Ciocca's advice in endeavoring to conduct themselves in a manner most beneficial to their children, which includes encouraging a healthy relationship with both parents. As the trial court aptly notes, we "don't think you have to be a psychiatrist or a psychologist to know that." We affirm custody to the mother.

### *Alimony*

Whether an alimony award is appropriate is dependent on the facts and circumstances of each case. The need of the recipient spouse, followed by the obligor's ability to pay, are the primary considerations in the determination of an award of alimony. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 Tenn. Ct. App. 1984); *Goodman v. Goodman*, 8 S.W.3d 289, 295 (Tenn. Ct. App. 1999). In making its determination of an alimony award, the court must balance several statutory factors including those enumerated in section 36-5-101(d)(1) of the Tennessee Code.[2]

---

[2]Section 36-5-101(d)(1) provides:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient . . . . Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

     (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

     (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

     (C) The duration of the marriage;

     (D) The age and mental condition of each party;

     (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

     (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

     (G) The separate assets of each party, both real and personal, tangible and intangible;

     (H) The provisions made with regard to the marital property as defined in § 36-4-121;

     (I) The standard of living of the parties established during the marriage;

     (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

     (K) The relative fault of the parties in cases where the court, in its discretion, deems it

(continued...)

The trial court has broad discretion in determining the type, amount, and duration of alimony based upon the particular facts of each case. *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998). The amount of alimony is largely within the discretion of the trial court. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). This Court is not inclined to alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id.*

Our statutes express a preference for an award of rehabilitative alimony. Tenn. Code Ann. § 36-5-101(d)(1)(2000); *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). The purpose of rehabilitative alimony is to provide an economically disadvantaged spouse temporary support for a period of time so that he/she may become and remain self-sufficient. *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997); *Burlew,* 40 S.W.3d at 470-71. Rehabilitative alimony is intended to promote the self-sufficiency of the disadvantaged spouse by allowing him/her to acquire additional job skills, education, or training. *Kinard*, 986 S.W.2d at 234.

The trial court ordered Mr. Williams to pay rehabilitative alimony of $750.00 per month to Mrs. Williams for a period of five years. Mr. Williams contends that this award was based on a finding that Mrs. Williams had an income deficit after expenses of approximately $700 per month, and that it is excessive in comparison with Mrs. Williams' actual need. He notes that her annual teacher's assistant salary of $12,214.47 is for nine months of work. Mr. Williams submits that if Mrs. Williams obtained summer employment at an equivalent hourly rate, she could substantially increase her annual income. He also contends that Mrs. Williams' car note of $343.77 a month will be paid off in 18 months, and that her $100 a month payment to Dr. Ciocca will be paid in full after eight months. He argues that based on her affidavit of expenses, Mrs. Williams income deficit, after considering these eventual decreases in expenses and assuming summer employment, is $512.88 for the first eight months, $412.88 for the following ten months, and $69.11 per month thereafter. He contends that the award of alimony should be reduced to this income deficit amount.

We have reviewed Mrs. Williams' affidavit of expenses and agree with the trial court that they are modest. As Mrs. Williams' counsel aptly emphasized at oral argument, these expenses include no amounts for rent or house note, utilities, garbage pick-up, household furnishings or other household related expenses because Mrs. Williams has resided in her mother's home since leaving the marital residence. We cannot agree with Mr. Williams' counsel's contention at oral argument that Mrs. Williams' "choice" to live with her mother should not be a factor in our consideration of the reasonableness of her expenses. As the trial court notes, it would not have been unacceptable for Mrs. Williams to include sufficient funds to allow her to live independently in her alimony

---

[2](...continued)
appropriate to do so; and
    (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 2000).

request. Moreover, we note that Mrs. Williams testified that it will cost approximately $15,000 over five years for her to continue her education and receive a teaching certificate.

Mr. Williams further submits that assuming, arguendo, Mrs. Williams' need, $750 per month is excessive considering his ability to pay. Mr. Williams affidavit reflects a net income of $3,074.02 per month. After deducting $1,098.00 in child support, Mr. Williams has a net income of $1,976.02, as compared to Mrs. Williams' net income of $695.43. An award of $750 per month thus leaves Mr. Williams with a net income of $1,226.02 and Mrs. Williams with a net income of $1,445.43 per month. We emphasize, however, that this is a temporary award, designed to enable Mrs. Williams to become self-sufficient. We further note that Mr. Williams' child support obligations partially terminate in 2004 and end completely in 2008. Upon review of the evidence before us, including Mr. Williams' statement of expenses in his affidavit, we do not find this rehabilitative award to be excessive or beyond the range of acceptable alternatives. This was a 20 year marriage which included relocations with the military and extended absences by Mr. Williams. Mr. Williams also has admitted to at least one extramarital affair which has caused permanent medical injury to Mrs. Williams. We find no abuse of discretion and confirm the trial court's award.

### *Attorney's Fees*

In a divorce case, an award of attorney's fees is treated as an award of alimony. ***Kinard v. Kinard***, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998). When determining whether to award attorney's fees, the trial court must consider the same factors used when considering a request for alimony. ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with alimony, need is the primary factor. ***Herrera v. Herrera,*** 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). An award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay those fees. ***Id.*** The questions of whether to award attorney's fees, and the amount thereof, are largely left within the discretion of the trial court and will not be disturbed on appeal unless the trial court clearly abused its discretion. ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995).

The trial court ordered Mr. Williams to pay $7,500.00 of Mrs. Williams' attorney's fees, payable in installments of $125.00 per month. Prior to the four day trial of this case, Mrs. Williams' fees amount to approximately $17,000.00. The record in this case illustrates a contentious divorce which included, inter alia, numerous hearings before the divorce referee to determine payment of child support and alimony, appeals by Mr. Williams of those determinations, petitions for injunctions and modifications thereof, motions for contempt, and clinical psychological evaluations. Upon review of the entire record, for the reasons noted supra in our determination of the issue of alimony, we do not believe the trial court abused its discretion in awarding Mrs. Williams a portion of her attorney's fees. We affirm.

*Appellee's Request for Attorney's Fees on Appeal*

It is within the discretion of this Court to award attorney's fees to the prevailing party on appeal where equitable. ***Hoalcraft v. Smithson***, 19 S.W.3d 822, 830 (Tenn. Ct. App. 1999). We hereby award Mrs. Williams her reasonable attorney's fees generated by this appeal.

*Conclusion*

The judgment of the trial court is affirmed. Mrs. Williams is awarded reasonable attorney's fees on appeal. This matter is remanded for a determination of the attorney's fees to which she is entitled. Cost of this appeal are taxed to the appellant, Mr. Steven Robert Williams, and his surety, for which execution may issue if necessary.

               _____

               DAVID R. FARMER, JUDGE