# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 24, 2013 Session

## SOUMYA PANDEY v. MANISH SHRIVASTAVA

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1259, Pt. I      Walter L. Evans, Chancellor**

_____

**No. W2012-00059-COA-R3-CV - Filed February 22, 2013**

_____

Following a four-day trial in this divorce case, the trial court entered an order naming the Mother primary residential parent and permitting her to relocate to Arkansas with the parties' minor child. The Father appeals. Because the trial court failed to provide any reason for its decision, we are unable to perform a meaningful review on appeal. Therefore, we remand this matter to the trial court to enter an order that contains the findings and conclusions mandated by Tennessee Rule of Civil Procedure 52.01.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Robert L. J. Spence, Jr., Bryan M. Meredith, Memphis, Tennessee, for the appellant, Manish Shrivastava

Margaret M. Chesney, Memphis, Tennessee, for the appellee, Soumya Pandey

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Manish Shrivastava ("Father") and Soumya Pandey ("Mother") are citizens of India. At some point, they moved to Ohio, where they married in March 2005. They had a son, Akul, in March 2006. Akul is a citizen of the United States and also a citizen of India. The family moved to Memphis, Tennessee in June 2007, so that Mother, who is a medical doctor, could participate in a four-year residency program at the University of Tennessee. In July 2008, when Akul was two years old, Mother filed a complaint for divorce. Father later filed a countercomplaint for divorce. Both Mother and Father sought to be named primary residential parent of Akul. A temporary parenting plan was entered providing that Akul would reside with Mother four nights per week and with Father three nights per week.

In January 2011, while the divorce proceedings were still pending, Mother sent a letter to Father informing him of her intent to relocate to Little Rock, Arkansas, with Akul, later that year. She explained that her four-year residency program in Memphis would end in June 2011, and that she had been accepted to a one-year fellowship program at the University of Arkansas. Father then filed, in the ongoing divorce proceedings, a petition to oppose Mother's proposed relocation with Akul, again seeking to be named primary residential parent. Father also alleged in his petition that Mother had told Akul that she intended to return to India with him. Father stated that Mother had no family ties in the United States and that all of her family remained in India, and he feared that she would flee there with Akul.[1] Father claimed that because India is not a signatory to the Hague Convention, he would face great difficulty in having Akul returned to the United States if Mother chose to take him there. Therefore, Father asked the trial court to require Mother to surrender Akul's passport and documents of Indian citizenship to the clerk of the court in order to protect against the risk that she would flee the country with him.

Mother subsequently filed her own petition, seeking permission to relocate with Akul to Arkansas and seeking to alter the parenting schedule. The parties entered into a settlement agreement resolving many of the issues involved in the divorce, such as the division of the parties' marital and separate property, and alimony. Basically, the only issues remaining for trial were regarding parenting time and child support. The parties entered into a "stipulation"

---

[1] Neither parent was a United States citizen, and neither had obtained a "green card" at the time of the proceedings below. Mother explained at trial that the only way that she could remain in the United States was to be involved in a fellowship program or to have a sponsor. She said that she was "on a Visa . . . with [the] University of Tennessee only for four years," and that she could only get another visa by accepting a fellowship.

that was meant to resolve various parenting issues in the event that the trial court ruled in a certain manner. For example, the parties stipulated that the trial court would determine who would be named the primary residential parent, but in the event that the court named Mother primary residential parent, then Father would be awarded 145 days of parenting time.

A bench trial was held over the course of four days in May 2011. Thereafter, the trial court entered an order and permanent parenting plan naming Mother primary residential parent of five-year-old Akul and permitting her to relocate to Little Rock, Arkansas with him. The permanent parenting plan stated that Father would have 145 days of parenting time. Akul's passport had apparently expired, and the trial court ordered both parties to cooperate in having it renewed. Although Father had offered to pay for the cost of a safe deposit box where Akul's passport could be held and accessed only if both parents were present, the trial court declined that option and instead ordered the parties, when applying for the child's passport, to "notify the United States Government that the child can only travel outside of the United States with written consent of the other parent or order of the Court."

Father filed a motion to alter or amend the divorce decree on numerous grounds. Relevant to this appeal, he pointed out that while the parenting plan stated that Father would receive 145 days of parenting time, in accordance with the parties' previous stipulation, the actual schedule of days set forth in the parenting plan only amounted to 131 days being allocated to Father.[2] Father also informed the trial court that he had been in contact with the Department of State regarding the child's passport, and he was informed that the Department could not issue a conditional passport with the types of restrictions set forth in the final decree of divorce. He attached to his motion his correspondence with the Department and an official flyer he received from the Department regarding the particular difficulties involved with parental abductions to India.

Mother filed a response, basically asserting that it was Father's fault that the parenting plan schedule did not provide him with 145 days of parenting time because it was derived from a schedule originally prepared by his attorney. Mother claimed that Father's preparation of the faulty schedule for the alternate residential parent amounted to a "misrepresentation," and she claimed that, despite the previous stipulation, he should not receive 145 days of parenting time because of his "unclean hands."

The trial court entered an amended divorce decree and parenting plan, altering the parenting schedule to provide Father with 140 days of parenting time, but not 145, as set

_____

[2] A great deal of Father's parenting time was to take place during breaks from school, and the parenting plan schedule was somewhat lacking in specifics regarding these breaks, simply stating, for instance, that Father's parenting time would begin "on the day the child is released from school."

forth in the parties' previous stipulation. The trial court also refused to require the passport to be kept in a safe deposit box, and instead reiterated its previous order that neither parent was allowed to leave the country with the child without either the consent of the other parent or a court order. Father timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, Father raises three issues for review:

1. Whether the trial court's ruling designating Mother as primary residential parent is contrary to the weight of the evidence and resulted from a misapplication of the law;
2. Whether the trial court erred in arbitrarily reducing Father's parenting time after originally stating that he would receive 145 days; and
3. Whether the trial court erred in denying Father's reasonable request that the child's passport be held in a safe deposit box to lessen the possibility of international child abduction.

For the following reasons, we remand this matter for the trial court to enter an order that contains the requisite findings of fact and conclusions of law mandated by Tennessee Rule of Civil Procedure 52.01.

## III. DISCUSSION

"A trial court's decisions on parenting arrangements and the designation of the primary residential parent are 'among the most important decisions confronting a trial court in a divorce case.'" *Morris v. Morris*, No. W2010-00293-COA-R3-CV, 2011 WL 398044, at *8 (Tenn. Ct. App. Feb. 8, 2011) (quoting *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006)). "In choosing which parent to designate as the primary residential parent for the child, the court must conduct a 'comparative fitness' analysis, requiring the court to determine which parent would be comparatively more fit."[3] *Id.* "There are currently two

___

[3] Although this case involves a proposed parental relocation, the "parental relocation statute," Tenn. Code Ann. § 36-6-108, has been held inapplicable in cases where the trial court is making an initial custody decision or parenting arrangement. *See Nasgovitz v. Nasgovitz*, No. M2010-02606-COA-R3-CV, 2012 WL 2445076, at *5-7 (Tenn. Ct. App. Jun. 27, 2012); *Rudd v. Rudd*, No. W2009-00251-COA-R3-CV, 2009 WL 4642582, at *5 -6 (Tenn. Ct. App. Dec. 9, 2009); *Gregory v. Gregory*, No. W2002-01049-COA-R3-CV, 2003 WL 21729431, at *5 (Tenn. Ct. App. July 14, 2003). Instead, a best interest analysis applies, and the court should consider the proposed relocation of the parent when making its best interest analysis. *Morris*, 2011 WL 398044, at *9; *Rudd*, 2009 WL 4642582, at *6.

different statutes[4] setting out non-exclusive lists of factors for the trial court to apply to help it reach the goal of determining a child's best interest" – Tenn. Code Ann. § 36-6-106[5] and

---

[4] "Both statutes set forth a nonexclusive list of factors applicable when the court adopts a parenting plan." *Taylor v. Knott*, No. M2012-00172-COA-R3-JV, 2012 WL 6449981, at *4 n.5 (Tenn. Ct. App. Dec. 12, 2012). Section 36-6-106(a) "enumerates factors relevant to the best interest of the child in divorce cases and other child custody determinations," while section 36-6-404(b) "enumerates factors relevant to the court's designation of a primary residential parent and the division of parenting time." *Id.* The factors in both statutes are "substantially similar," and "both statutes allow the court to consider any other relevant factors." *Id.* "'[I]n most cases, the analysis and the result would be the same regardless of which set of factors is applied.'" *Id.* (quoting *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *6 (Tenn. Ct. App. Oct. 24, 2012)).

[5] Tennessee Code Annotated section 36-6-106(a) provides, in relevant part:

In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;
(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . . .
(4) The stability of the family unit of the parents or caregivers;
(5) The mental and physical health of the parents or caregivers;
(6) The home, school and community record of the child;
(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;
        (B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . . .
(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and
(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order.

§ 36-6-404.[6] ***Thompson v. Thompson***, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *5 (Tenn. Ct. App. Oct. 24, 2012). Both of these statutes provide that the court's parenting decision is to be based on the child's best interest. ***Id.*** "In fashioning a parenting plan, the trial court is charged with keeping the best interest of the child paramount; the needs of the parents are secondary. The parenting plan is focused on the child, and the goal is to place the child in the environment that best serves his or her needs." ***Barnes v. Barnes***, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *6 (Tenn. Ct. App. Oct. 24, 2012) (citing Tenn. Code Ann. § 36-6-106(a); Tenn. Code Ann. § 36-6-404; *Eldridge v. Eldridge*, 42 S.W.3d 82,

---

[6] Tennessee Code Annotated section 36-6-404(b) provides, as relevant here:

The court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child. . . . [T]he court shall consider the following factors:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;
(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;
(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;
(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;
(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
(7) The love, affection, and emotional ties existing between each parent and the child;
(8) The emotional needs and developmental level of the child;
(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;
(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;
(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;
(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;
(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;
(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and
(16) Any other factors deemed relevant by the court.

85 (Tenn. 2001); *Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999); *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at \*5 (Tenn. Ct. App. Oct. 15, 2004)).

In the case before us, Father argues that the trial court applied an incorrect standard by focusing on Mother's desire to move rather than the child's best interest. He contends that it was in Akul's best interest to remain in Memphis with him rather than moving to Arkansas with Mother, where she, admittedly, had only a one-year fellowship. Unfortunately, our review of the trial court's decision is hampered by the fact that, after the four-day trial, the trial court made no findings of fact with regard to its decision to name Mother the primary residential parent rather than Father. The divorce decree simply stated:

> The Court finds and rules that Mother should be designated as the primary residential parent of the parties' minor child, Akul Shrivastava, born March 2, 2006. The Court further finds that Mother shall be permitted to relocate with the minor child to Little Rock, Arkansas for Mother's medical fellowship. . . .

> The Court has ordered the provisions of the Amended Permanent Parenting Plan Order based on the Court's ruling that Mother be awarded the primary residential parent of the minor child and that Mother and the minor child can relocate to Little Rock, Arkansas for Mother's medical fellowship. The Court finds that the Amended Parenting Plan makes adequate and sufficient provisions for the custody and maintenance of the minor child of this marriage . . . .

There were no factual findings regarding the comparative fitness of the parents, and there was no mention of the best interest of Akul or the statutory "best interest" factors that should have controlled the trial court's decision.

"In bench trials, trial courts must make findings of fact and conclusions of law to support their rulings." *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at \*3 (Tenn. Ct. App. Dec. 27, 2012). "Simply stating the trial court's decision, without more, does not fulfill this mandate." *Barnes*, 2012 WL 5266382, at \*8. Tennessee Rule of Civil Procedure 52.01 states, in pertinent part:[7]

---

[7] We note that prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party" prior to the entry of judgment. However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party.

(continued...)

> In all actions tried upon the facts without a jury, the court shall *find the facts specially* and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

(Emphasis added). We have previously held that "the General Assembly's decision to require findings of fact and conclusions of law is 'not a mere technicality.'" **Hardin**, 2012 WL 6727533, at *3 (quoting *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009)). It serves the important purposes of facilitating appellate review and promoting the just and speedy resolution of appeals. **Id.** "'Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision.'" **Id.** (quoting *In re K.H.*, 2009 WL 1362314, at *8).

"[F]indings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations 'often hinge on subtle factors, including the parents' demeanor and credibility during [the] proceedings.'" **In re Connor S.L.**, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (quoting *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010)). Normally, appellate courts are reluctant to second-guess a trial court's decision with regard to a parenting schedule, but without findings of fact, we cannot discern the basis for the trial court's decision, "and we are unable to afford appropriate deference to the trial court's decision." **Id.** Although "there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination," the statute, nevertheless, "requires the trial court to consider all the applicable factors."[8] **Id.** at *7; *see, e.g.*, Tenn. Code Ann. § 36-6-404 (stating that "the court *shall* consider the following factors") (emphasis added). "Moreover, this Court has encouraged trial courts to 'be as precise as possible in making child custody findings' in order to facilitate meaningful appellate review." **Id.** (quoting *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011)). The orders entered by the trial court in this case simply do not indicate how or why the trial court reached its decision or what factual findings led it to rule as it did.

---

[7](...continued)
**Hardin**, 2012 WL 6727533, at *3.

[8] "This Court has previously expressed concern that the case law holding that trial judges need not articulate the factors pursuant to Tennessee Code Annotated Section 36-6-106(a) appears to conflict with the intent of Tennessee Rule of Civil Procedure 52.01." **In re Connor S.L.**, 2012 WL 5462839, at *7 n.6 (citing *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 n.13 (Tenn. Ct. App. Oct. 25, 2011)).

On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)). However, that is not the case here. Determining the best interest of a child is a "fact-intensive issue," *Hardin*, 2012 WL 6727533, at *5, and the basis of the trial court's decision in this case is not readily ascertainable. We note that the trial judge did make a few oral remarks at the conclusion of the trial regarding his perception of the parents. He said that both Mother and Father were "worthy parents" who had "done an outstanding job" in raising Akul, had "an equal and burning affection" for him, and wanted the best for him. The judge noted that both parents had "devoted substantial time to their professions while at the same time being ideal parents for this minor child." He also said that both parents had "devoted substantial time and attention to the care and support of Akul, which has resulted in Akul doing well in school, apparently loves his mom and loves his father and enjoys being with both of them." Clearly, these observations weigh equally in favor of Mother and Father and do not explain why the trial court chose to name Mother primary residential parent, allowing her to relocate with Akul to Arkansas for a one-year job opportunity. The only comment that sheds light on the court's decision in this regard was the following statement by the trial judge:

> As the Court has indicated to the attorneys, children move to wherever their parents relocate to. And parents relocate or live in a particular area where they primarily have their source of income and employment. And the Court considers the parent's decision to move to be more important than a child's decision to remain in a particular location where the child may have developed friends and classmates that they may have grown up with.[9]

Clearly, this statement is at odds with the best interest analysis that should have governed the trial court's decision. *See, e.g.*, *Barnes*, 2012 WL 5266382, at *6 ("In fashioning a parenting plan, the trial court is charged with keeping the best interest of the child paramount; the needs of the parents are secondary. The parenting plan is focused on the child, and the goal is to place the child in the environment that best serves his or her needs."). Furthermore, the final order entered by the trial court did not incorporate these oral statements. "It is well

---

[9] The judge later said, "it's a close call because of the outstanding job and commitment that Mr. Shrivastava has shown for the child." We recognize that "[t]he decision of which parent to designate as the primary residential parent becomes increasingly difficult where, as here, both parents are fit and proper persons to care for the child." *Gregory*, 2003 WL 21729431, at *4. However, this does not excuse the court from providing some reason for its decision.

settled that a court speaks through its orders." *In re Connor S.L.*, 2012 WL 5462839, at *5 (citing *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977)). "'A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court[.]'" *Id.* (quoting *Cunningham v. Cunningham*, No. W2006-02685-COA-R3-CV, 2008 WL 2521425, at *5 (Tenn. Ct. App. Jun. 25, 2008)).

Although trial courts have broad discretion in fashioning a parenting arrangement, the decision "must be based on the proof at trial and the applicable principles of law." *Morris*, 2011 WL 398044, at *8. We cannot discern, from the trial court's order, what "proof at trial" affected the trial court's ruling, nor can we tell whether the trial court applied the appropriate legal analysis in making its decision. We do not know what factors, if any, the trial court considered in naming Mother the primary residential parent and fashioning the parenting schedule. During the trial court's oral remarks at trial, counsel for Father asked the judge if he had applied the best interest analysis, to which the judge responded, "Yes." However, later in the proceedings, the judge stated that he had "considered 108 factor as justifying such a move [to Arkansas]." As noted above, the parental relocation statute, Tenn. Code Ann. § 36-6-108, was inapplicable in this case. Not knowing which analysis the trial court applied, we are simply left to wonder why the trial court chose to place Akul with Mother in Arkansas over Father in Memphis.

Because we are unable to conduct a meaningful appellate review of the trial court's decision, we remand to the trial court for the entry of an order on the best interest issue that complies with Rule 52.01. *See **Hardin***, 2012 WL 6727533, at *3. The trial court's orders did not provide any explanation for denying Father's request to have Akul's passport held in a safe deposit box, or for reducing his parenting time beyond the parties' previous stipulation. These matters should be addressed on remand as well.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the appellant, Manish Shrivastava, and his surety, and one-half to the appellee, Soumya Pandey, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.