IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 6, 2005 Session

## JULIE DUFF PETTY v. RANDY NEAL PETTY

**Appeal from the Chancery Court for Loudon County**
**No. 10271      Frank V. Williams, III, Chancellor**

---

**No. E2004-01421-COA-R3-CV - FILED MAY 19, 2005**

---

In this divorce case, Mother was declared to be the primary residential parent and Father's overnight co-parenting time was required to be exercised at his parents' home with them present. This restriction was prompted by presentation of evidence that Father had viewed computer internet sites exhibiting material of a sexual nature and had placed a personal advertisement on an internet site in an apparent effort to attract sexual partners. Father appeals. Absent proof that Father's actions presented any risk of harm to his children, we modify the judgment of the trial court and the parenting plan to delete the requirement that Father's overnight visitation be supervised by his parents at their home. We further modify the parenting plan to the extent that it does not require mutual decision-making.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Vivian Lea Crandall, Oak Ridge, Tennessee, for the Appellant, Randy Neal Petty.

Larry Clayton Vaughan, Knoxville, Tennessee, for the Appellee, Julie Duff Petty.

**OPINION**

This appeal arises out of a divorce case filed by the appellee, Julie Duff Petty, ("Mother") against the appellant, Randy Neal Petty, ("Father"). At the time of the divorce, the parties had two minor children, Victoria Jean Petty, born September 3, 1995, and Wesley Ray Petty, born May 21, 1999. The parties agreed that Mother would be primary residential custodian of the children and that it would be left to the trial court to determine Father's visitation schedule with the children under a Permanent Parenting Plan.

The case was tried on August 5, 2003, and, after hearing testimony of the parties and argument of counsel, the trial court entered its judgment granting the parties a divorce. Among other things, the judgment provides that "[Father] shall have standard co-parenting time with the minor children; however, any overnight co-parenting time shall be exercised at [Father's] parents' residence with [Father's] parents there. The co-parenting time of [Father] and [Mother] shall be codified in a PERMANENT PARENTING PLAN to be filed herein."

By order entered October 30, 2003, the trial court approved a Permanent Parenting Plan. In accord with the parties' prior agreement, the Plan provides that Mother shall have primary residential custody of their two minor children. *Inter alia*, the Plan further provides that "[t]he Court has expressed concerns re: Father's penchant for pornography," that sole decision-making is decreed to Mother and "[m]utual decision-making and designation of a dispute resolution process other than Court action shall NOT be required because . . . Father *has engaged in* . . . [a] A penchant towards pornography" and that, pursuant to Tenn. Code Ann. § 36-6-406(b), "Father's residential time with the children shall be LIMITED because *that parent has engaged in* . . . [a] penchant towards pornography." (Emphasis in original.) The Plan further provides that "Father's overnight co-parenting time shall be restricted and limited to being observed at his parents' residence."

The sole issue presented in this appeal, as restated, is whether the trial court erred in decreeing that Father's overnight co-parenting time with the children shall require the supervision of his parents and in decreeing that Mother shall have sole decision making authority with respect to the parties' two minor children to Father's exclusion.

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

Although in her brief Mother apparently contends that the trial court's conclusion that Father's visitation should be restricted and that he should be excluded from the decision making process with respect to his children was prompted by the trial court's consideration of a multitude of factors, the record before us indicates that the court actually based its conclusion solely upon its finding that Father has a "penchant for pornography." That this was the sole basis for the trial court's decision with respect to the contested elements of its decree is not subject to reasonable dispute given the above language quoted from the Permanent Parenting Plan and the following statements of the court at trial:

I'm going to modify the standard visitation a little bit, given some of the facts in the case. It's going to be essentially the standard visitation with alternate weekends, some extended time in the summer, but I'm going to provide that the overnight be exercised in the presence of the paternal grandparents. He's to have overnight visitation, but it's going to be at the grandparent's home.

And that's simply because I think that I've heard enough - - and let me say that I'm excluding the testimony of the wife with regard to the material that she says she received over the telephone. And had I known when counsel was offering that that they had no corroboration for it, I would not have allowed it in, because it was clearly being introduced for the purpose of proving the truth of the matter stated rather than simply expressing concerns as to why the father should not be allowed standard visitation.

But there's enough other material with regard to the visits to the pornographic sites and things of that sort that cause me to have concern to want to take sort of a gradual approach to this thing. My interest is to restore this father to all of the relationships that fathers and mothers typically have in a divorce.

And divorce is always bad. There's nothing good ever comes out of a divorce. It may not be as bad as the present situation, I don't know. But in any event, the goal is to reach that relationship that parents typically have in these types of situations. But what I'm going to do is take a little while and let's see if the father can at some point convince me that his visits to these sites have come to an end.

I think my common sense tells me that these things can be addictive and progressive in nature rather than something that are usually controlled, so I'm going to take a wait-and-see attitude about it. Otherwise, the visitations are to be essentially standard . . . ."

In short, the trial court concludes that Father has a "penchant for pornography" and that this warrants the court's entry of a parenting plan which requires that Father's visitation be supervised and allows for Father's exclusion from decisions regarding his children. Given our independent determination that the evidence does not otherwise support the trial court's decree as to visitation and decision-making, we are compelled to determine whether these grounds stated by the trial court are sufficient to support its imposition of restrictions.

Tenn. Code Ann. § 36-6-401(a) pertains to parenting plans and provides that in proceedings regarding child visitation "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." Further, Tenn. Code Ann. § 36-6-402(3) defines "permanent parenting plan" as "a written plan for the parenting and best interests of the child . . . ." With respect to matters of child visitation and consistent with the legislature's focus

upon the best interests of the child, the Tennessee Supreme Court stated as follows in *Eldridge v. Eldridge*, 42 S.W.3d 82, 85, (Tenn. 2001):

> In reviewing the trial court's visitation order for an abuse of discretion, the child's welfare is given "paramount consideration," and "the right of the noncustodial parent to reasonable visitation is clearly favored." Nevertheless, the noncustodial parent's visitation "may be limited, or eliminated, if there is definite evidence that to permit . . . the right would jeopardize the child in either a physical or moral sense." (citations omitted)

Tenn. Code Ann. § 36-6-402(5) defines a "residential schedule" as "the schedule of when the child is in each parent's physical care." Tenn. Code Ann. § 36-6-406 sets forth those factors which allow a court to incorporate restrictions in a parenting plan as to a parent's residential time with his or her child and otherwise:

> (a) The permanent parenting plan and the mechanism for approval of the permanent parenting plan shall not utilize dispute resolution, and a parent's residential time as provided in the permanent parenting plan or temporary parenting plan shall be limited if it is determined by the court, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:
> (1) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting responsibilities; or
> (2) Physical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601.
> (b) The parent's residential time with the child shall be limited if it is determined by the court, based upon a prior order or other reliable evidence, that the parent resides with a person who has engaged in physical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601.
> (c) If a parent has been convicted as an adult of a sexual offense under § 39-15-302, title 39, chapter 17, part 10, or §§ 39-13-501 - 39-13-511, or has been found to be a sexual offender under title 39, chapter 13, part 7, the court shall restrain the parent from contact with a child that would otherwise be allowed under this part. If a parent resides with an adult who has been convicted, or with a juvenile who has been adjudicated guilty of a sexual offense under § 39-15-302, title 39, chapter 17, part 10, or §§ 39-13-501 - 39-13-511, or who has been found to be a sexual offender under title 39, chapter 13, part 7, the court shall restrain that parent from contact with the child unless the contact occurs outside the adult's or juvenile's presence and sufficient provisions are established to protect the child.
> (d) A parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing:

(1) A parent's neglect or substantial nonperformance of parenting responsibilities;

(2) An emotional or physical impairment which interferes with the parent's performance of parenting responsibilities as defined in § 36-6-402;

(3) An impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting responsibilities;

(4) The absence or substantial impairment of emotional ties between the parent and the child;

(5) The abusive use of conflict by the parent which creates the danger of damage to the child's psychological development;

(6) A parent has withheld from the other parent access to the child for a protracted period without good cause;

(7) A parent's criminal convictions as they relate to such parent's ability to parent or to the welfare of the child; or

(8) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

We must assume that the trial court's decision to place limitations upon Father's visitation is based solely upon its determination, pursuant to subsection (d)(8) of the foregoing statute, that Father's "penchant for pornography" constitutes conduct which is adverse to the best interests of the child. The record does not indicate that the trial court restricted Father's visitation based upon any of the other factors listed in this statute, nor do we find proof that any of these factors were present in this case.

With respect to the trial court's ruling that Father need not be included when decisions are made regarding the parties' children, we note the following statutory guidelines. Tenn. Code Ann. § 36-6-407(b)(1) provides that a "court shall order sole decision-making to one (1) parent when it finds that ... [a] limitation on the other parent's decision-making authority is mandated by § 36-6-406." As we have noted, the trial court states in the parenting plan that the exclusion of Father from the decision making process is warranted by the same finding that prompted visitation restrictions - Father's "penchant for pornography." Accordingly, we must assume that the court excluded Father from decision making under authority of § 36-6-407(b)(1).

Evidence was presented in this case that, during the course of the parties' marriage, Father communicated with a woman via the internet by e-mail and that these communications were of a sexual nature. Additional evidence was presented that Father placed a descriptive profile of himself on a computer website designated SexyAds.Com. which lists Father's "[i]nterests" as "[a] discreet relationship", "[c]asual sex" and states that he "seeks" "[w]omen" and "couples." Further evidence shows that Father has in the past visited adult web sites of a sexual nature for entertainment purposes. Father does not deny any of these actions, although he asserts that he did not place the profile on SexyAds.Com in order "to meet anyone or to do anything like that . . . I wondered what kind of responses are out there, crazy people sending stuff and pictures and things like that."

While clearly Father's time could have been better spent in activities other than those described, no proof has been presented in this case that any of the activities ascribed to Father has affected his relationship with his children or that his children have been, or will be, exposed to any material which has been designated "pornographic." In this regard, Father testified as follows:

> Q. Did you ever have your children around when you would be on the Internet looking at any adult site?
>
> A. Never. I know [Mother] indicated that I would be up late at night doing that, and that's exactly right. I would do it late at night when she would go to sleep. She knew I was doing it. She would go to sleep and when the kids were sleep, on my own private time in my own solitude.
>
> . . . .
>
> Q. Okay. Mr. Petty, have you ever done anything improper around your children?
>
> A. Not to my knowledge. I mean, as a parent you hope that you do the right thing with your kids and you support them and you love them and you play with them. Certainly it's hard to do everything right. I know for a fact that I have never subjected my children to pornography in any way. And I know for a fact that I have never had sexual conduct, affections with anyone else, I've never had a person of the opposite sex around my children and displayed any affection whatsoever.

Consistent with this testimony of Father, Mother's testimony indicates that no activity engaged in by Father has ever exposed their children to a risk of harm:

> Q. Being totally straightforward and honest with the Court, as far as you know, Mr. Petty's never done anything inappropriate to your children as far as you know, has he, ma'am?
>
> A. No.

It appears from the record that, to whatever extent Father engages in the activities objected to, he does so outside of the presence of his children and there is no proof that his children are ever exposed to any of these activities. Nor is there proof that any of these activities affects Father's relationship with his children in any way whatsoever. In *Parker v. Parker*, 986 S.W.2d 557,563 (Tenn. 1999), the Tennessee Supreme Court acknowledged that "sexual indiscretion does not, by itself, disqualify a parent from being awarded custody, but it may be a relevant factor if it involves the neglect of the child." See also, *Lockmiller v. Lockmiller*, No. E2002-02586-COA–R3-CV, 2003 WL 23094418, at *5, 2003 Tenn. App. LEXIS 953, at *14 (Tenn. Ct. App. E.S., filed Dec. 30, 2004).

Although the case before us involves child visitation rather than child custody, the same principle controls and the record offers no proof that Father has neglected the parties' children because of sexual indiscretion. Additionally, no expert proof was submitted by Mother to support the trial court's statement that the activities engaged in by Father "can be addictive and progressive in nature rather than something that are usually controlled" and we do not find this to be a proper matter for judicial notice. Tenn. R. Evid. 201(b) only allows a court to take judicial notice of adjudicative facts "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." We disagree that "the addictive and progressive nature" of activities of the sort engaged in by Father in this case is a matter of fact which meets either of these criteria.

While we have no doubt that the trial court's rulings at issue were well-intentioned, we are constrained by our construction of the applicable law and our stated findings to respectfully disagree with such rulings. Accordingly, we decree the following modifications. The judgment of divorce is modified by deletion of the following language appearing at paragraph 3 of such judgment: "however, any overnight co-parenting time shall be exercised at Defendant's parents' residence with Defendant's parents there." Further, the Permanent Parenting Plan entered on October 30, 2003, is modified as follows:

1) All restrictions which limit Father's overnight co-parenting time with his children by requiring that such co-parenting time take place only at the residence of Father's parents in their presence are removed.

2) Mother shall not have sole decision making authority with regard to the parties' children and major decisions, as designated by the plan, shall be the joint decisions of both parents.

3) Dispute resolution shall be by mediation.

The cause is remanded for collection of costs. Costs of appeal are adjudged against the appellee, Julie Duff Petty, for which execution may issue.

_____
SHARON G. LEE  JUDGE