IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 3, 2009

**K.A.G. v. B.L.I.**

**Appeal from the Juvenile Court for Marshall County**
**No. 59-0-6847      Stephen S. Bowden, Judge**

_____

**No. M2008-02484-COA-R3-JV - Filed November 25, 2009**

_____

This appeal stems from a paternity action in which K.A.G. ("Mother") filed a petition against B.L.I. ("Father") seeking legitimation of Z.R.G. ("the Child"), her then 14-year-old son, and an award of child support. The parties stipulated that Father was the biological father of the Child based on the results of DNA testing. An agreed order was entered setting Father's current child support obligation under the Child Support Guidelines ("the Guidelines"). Following a hearing on the remaining issues, Father was ordered to pay child support retroactive to the filing of the petition plus 36 months. Father was also ordered to pay a portion of the Child's orthodontic and dental expenses. Mother appeals, contending that the trial court erred in declining to award her child support back to the date of the child's birth. We conclude that the court abused its discretion in deviating from the presumption that child support should be awarded retroactively to the date of the child's birth. We vacate that portion of the trial court's judgment pertaining to retroactive child support and remand for a hearing at which the trial court will calculate, in a manner consistent with the Guidelines, the child support due Mother from the date of the Child's birth to the date of filing of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Megan A. Kingree, Shelbyville, Tennessee, for the appellant, K.A.G.

William M. Haywood, Lewisburg, Tennessee, for the appellee, B.L.I.

**OPINION**

I.

Mother filed her petition for legitimation and child support on September 19, 2007. In his response, Father stated that "until the filing of the petition [he] had no knowledge of the child nor

the alleged paternity." Following DNA testing, the parties stipulated that Father was the Child's biological father. On February 20, 2008, they agreed to the entry of an order setting Father's prospective child support, pursuant to the Guidelines, at $618 per month. The child support worksheet reflects Father's adjusted gross income for this purpose was $3,166 per month and Mother's was $2,083.

A bench trial on Mother's petition for an alleged arrearage of child and medical support was held in May 2008.[1] The proof showed that Mother and Father met in 1988 and began a sexual relationship two years later. Father was then, and still remains, married to his current wife. Mother became pregnant in 1992. The Child was born on March 5, 1993. Mother did not place Father's name on the birth certificate. Mother told Father, the Child, and her family the identity of the Child's father. Father conceded that Mother told him that she was pregnant with his child and brought the baby to see him on her way home from the hospital after the Child's birth. The following day, Father visited Mother and the Child at the home of Mother's mother. At the hearing, Mother introduced a picture purportedly depicting that March 1983 visit; Father is seen in the picture holding the Child with Mother seated nearby. Father had little doubt that the Child was his, although he was not certain because he believed it was possible that another man was the father. Mother denied ever telling Father that she was dating someone else. Father never attempted to legitimate the Child. The parties continued their affair for many years after the Child's birth. The Child's maternal grandmother helped Mother to care for the Child "from time to time."

At trial, Father introduced his wage statements from 1996 - 2006. In addition, he testified that his income at the time of the trial was $38,500 and in 1993, the year of the Child's birth, he earned about $25,000. Father never provided any financial assistance to Mother for the Child. Father did take the Child fishing and the Child visited Father's residence but did not stay overnight. The parties once took the Child to visit a space institute. According to Mother, she had always told the Child that Father was his natural father and the Child called him "Daddy Bobby." Mother introduced a paper which Father had given her on which Father had listed the names of Father's family members; Mother explained that this was a "family tree" that Father gave her for the Child. The parties continued their romantic relationship until about 2006. During that time, Father continued to see the Child regularly during Father's visits to Mother's home until their relationship ended. Father's wife had suspected that the Child was Father's before this fact was confirmed. Although Mrs. I. had known Mother and the Child for years, Mother never told Mrs. I. that the Child belonged to Father.

In August 2007, Mother advised Father that she needed financial help after she learned that the Child needed braces at a total cost of $5,185. Father told Mother he could not afford to pay for the braces. Since August 2007, Father had paid a total of $33 toward the Child's orthodontic expenses. In addition, the Child had incurred a bill for regular dental services for $550 as reflected

---

[1] Although there is no verbatim transcript of the evidence in the record, we are provided with the statement of the evidence approved by the trial court pursuant to Tenn. R. App. P. 24(c).

in a June 2007 bill Mother introduced. As earlier noted, Mother filed a petition for legitimation and child support the following month.

At the conclusion of the hearing, Mother requested a judgment awarding a child support arrearage retroactive to the date of the Child's birth, and a judgment for one half of the child's orthodontic and dental bills plus court costs and attorney's fees. Father requested that the trial court apply equitable principles in calculating the child support arrearage.

As relevant to this appeal, the trial court, in its October 9, 2008 order, legitimated Father as the Child's biological father and awarded "the sum of $25,338.00 in retroactive arrears (five months from 9/17/07 to 2/20/08 plus 36 months) and $1157.00 in medical/dental bills." The court held each party responsible for the party's own attorney's fees. Mother filed a timely notice of appeal.

II.

Mother's appeal raises the following questions for our consideration[2]:

1. Did the trial court err in failing to award Mother child support retroactive to the date of the child's birth pursuant to the provisions of Tenn. Code Ann. § 36-2-311(a)(11) (2008)?

2. Did the trial court err in failing to order Father to pay his pro rata share of the child's orthodontic and medical bills?

Additionally, in concluding his appellate brief, Father seeks an award of court costs and attorney's fees on appeal. Because Father failed to raise this "issue" in the "Issues Presented" section of his brief and failed to include appropriate argument and citations to authority, we decline to consider his request. *See **Hawkins v. Hart***, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001).

III.

Factual findings of a trial court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); **Bogan v. Bogan**, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is *de novo*, with no deference accorded to the trial court's conclusions of law. Tenn. R. App. P. 13(d); **Campbell v. Florida Steel Corp**., 919 S.W.2d 26, 35 (Tenn. 1996). Statutory interpretation, being a question of law, is reviewed by us *de novo*, with no presumption of correctness. **Wallace v. State**, 121 S.W.3d 652, 656 (Tenn. 2003). In matters of child custody, visitation and related issues, trial courts are given broad discretion; as such, appellate courts are reluctant to second-guess a trial

_____

[2]Although Mother presents four separate issues in her brief, the first three are related to the same essential question. Mother contends that these issues are "logically intertwined." We agree.

court's determinations regarding these important domestic matters. ***Parker v. Parker***, 986 S.W.2d 557, 563 (Tenn. 1999) (citing ***Gaskill v. Gaskill***, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)).

IV.

Mother asserts that the trial court erred in failing to award full retroactive child support under the Guidelines. In particular, she contends that (1) there was no valid basis for the trial court to deviate from the presumption that Father was responsible for child support back to the date of the child's birth; (2) the trial court failed to make the findings required to support his decision to deviate from the presumption; and (3) the evidence preponderates against the trial court's judgment.

In this state, it is a well-settled principle that biological parents must, as a general rule, support their children until they reach the age of majority. *See* T.C.A. § 34-1-102(a), (b) (2001); ***Smith v. Gore***, 728 S.W.2d 738, 750 (Tenn.1987). A "parent's obligation to support, as well as the child's right to support, exist regardless of whether there is a court order, and regardless of whether the parents were ever married. When paternity of a child born out of wedlock is established, the trial court is required to address not only the child's need for future support, but also the father's obligation to pay past support." ***State ex rel. Hayes v. Carter***, W2005-02136-COA-R3-JV, 2006 WL 2002577 at *2 (Tenn. Ct. App. W.S., filed July 6, 2006) (citing T.C.A. § 36-2-311; ***Berryhill v. Rhodes***, 21 S.W.3d 188, 192 (Tenn. 2000); ***State ex rel. Vaughn v. Kaatrude***, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). "The obligation to support a child exists from the child's birth, and upon entry of an order establishing paternity, the father is liable for support back to that date." ***State ex rel. Clark v. Wilson,*** M2001-01626-COA-R3-CV, 2001 WL 31863296, *3 (Tenn. Ct. App. M.S., filed Dec. 23, 2002). "An award for retroactive child support is generally considered to have two purposes: to benefit the parties' child and to reimburse the custodial parent for contributing more than [that parent's] fair share to the child's support." ***State ex rel. Stewart v. Lockett***, M2001-00809-COA-R3-JV, 2002 WL 121636 at *2, (Tenn. Ct. App. M.S., Jan. 30, 2002) (citing ***Kaatrude***, 21 S.W.3d at 248.). We review the trial court's award of past child support with these principles in mind.

In support of its decision, the trial court found as follows:

> [The Child] . . . is the biological son of [Father].
>
> [Father] continued to have a relationship with [Mother] during the pregnancy, saw the [Child] immediately after birth, visited [Mother] and the [Child] over the past few years, and . . . the [Child] referred to [Father] as "Daddy Bobby" until the petition was filed.
>
> That the petition was filed on September 17, 2007, with [Mother] stating that her reasons for filing later were:
>
> a. didn't want to cause [Father] problems with his wife; and,

-4-

b. that she didn't need the money as long as her mother was alive.

[Mother] failed and refused to place [Father's] name on the birth certificate, notify her doctor or the hospital of the name of the father, inform the putative father registry, or legitimate the [Child] until now.

Child support was calculated at $618.00 per month beginning February 20, 2008. [Mother] is requesting one half (½) of the cost of the [Child's] orthodontic care or the sum of $1157.00 and her attorney fees.

**WHEREAS**, the court has considered the proof presented by the parties regarding the best interest of the child, the need, obligations and abilities of the parties, and the equity in this matter, the Court finds that the application of the child support guidelines would be unjust or inappropriate in the instant case for the following reasons:

Although [Father] was "pretty sure" he was the father, [Mother's] failure or refusal to legitimate the [Child] and notify[ ] the world who the father was, and failure to notify the doctor or the hospital of the parentage of the [Child] left some doubt in [Father's] mind as to the absolute certainty of parentage.

As to the best interest of the [Child], it would be unjust to enforce the child support guidelines, as the [Child] was provided for by the maternal grandmother and [Mother] essentially waived her claim to child support to a degree by her failure to legitimate the [Child].

The statute provides that the Court may use "equity between the parties" to determine how far back retroactive child support should be set. It would be difficult for the Court to determine the parties' income, number of days visitation, credit for deduction, insurance credits, etc. from the date of the [Child's] birth and the subsequent years. In addition, [Father] has lost any opportunity of a relationship with [the Child]. However, the Court does not completely blame [Mother]. [Father] knew [the Child] was probably his and had the same opportunities to bring this matter before the Court.

(Bold print and capitalization in original).

Tenn. Code Ann. § 36-2-311(a)(11)(A) requires the trial court to establish prospective child support at the time a parentage order is entered. As previously noted by us, the Guidelines were properly applied by the trial court in setting Father's prospective support payments of $618

beginning February 20, 2008. Neither party challenges the trial court's judgment setting prospective child support.

We turn now to the issue of retroactive support, that is, the support owed prior to the time the petition was filed. An award of retroactive child support falls within the trial court's discretion; however, that discretion is not without limits. The Supreme Court has observed that the trial court's discretion is "cabined by the statutory requirement that it must presumptively apply the Child Support Guidelines" and further limited by the presumption in Tenn. Code Ann. § 36-2-311(a)(11)(A), that child support "shall be awarded retroactively to the date of the child's birth." *In re T.K.Y.*, 205 S.W.3d 343, 355 (Tenn. 2006); *see also* Tenn. Code Ann. § 36-5-101(e)(1)(A)(2008); Tenn. Comp. R. & Regs. 1240-2-4-.06. In the present case, our focus is on the court's decision to deviate from an award of full retroactive support since the birth of the Child.[3]

Tenn. Code Ann. § 36-2-311(a)(11) addresses awards of retroactive child support in paternity actions. The statute provides, in relevant part, as follows:

> (A) Determination of child support pursuant to chapter 5 of this title. When making retroactive support awards pursuant to the child support guidelines established pursuant to this subsection (a), the court shall consider the following factors as a basis for deviation from the presumption in the child support guidelines that child and medical support for the benefit of the child shall be awarded retroactively to the date of the child's birth:
>
> (i) The extent to which the father did not know, and could not have known, of the existence of the child, the birth of the child, his possible parentage of the child or the location of the child;
>
> (ii) The extent to which the mother intentionally, and without good cause, failed or refused to notify the father of the existence of the child, the birth of the child, the father's possible parentage of the child or the location of the child; and
>
> (iii) The attempts, if any, by the child's mother or caretaker to notify the father of the mother's pregnancy, or the existence of the child, the father's possible parentage or the location of the child.

---

[3] It appears that the trial court arrived at its award of retroactive support of $25,338 by multiplying Father's current child support obligation of $618 per month times the number of months it deemed as the appropriate period for retroactive support to be awarded, *i.e.*, $618 x 41 months = $25,338.

(B) In cases in which the presumption of the application of the guidelines is rebutted by clear and convincing evidence, the court shall deviate from the child support guidelines to reduce, in whole or in part, any retroactive support. The court must make a written finding that application of the guidelines would be unjust or inappropriate in order to provide for the best interests of the child or the equity between the parties.

\* \* \*

(F) In making any deviations from awarding retroactive support, the court shall make written findings of fact and conclusions of law to support the basis for the deviation, and shall include in the order the total amount of retroactive support that would have been paid retroactively to the birth of the child, had a deviation not been made by the court . . . .

In the present case, the factors set forth in Tenn. Code Ann. § 36-2-311(a)(1)(A)(i) - (iii) are clearly inapplicable. Succinctly stated, that section "only contemplates excusing retroactive child support to the date of birth in circumstances where the father was not aware of the existence of the child." *In re T.K.Y.,* 205 S.W.3d at 355. There is no question in the case before us that Father knew about the Child and his possible, even probable, parentage. In his memorandum of law to the trial court, Father admitted as much when he conceded that "[i]n all candor, [Subsection A(i), (ii), and (iii)] are more convincing for [Mother] than [Father]." Finding no basis to deviate from the presumptive award of support back to the Child's birth in Subsection (A)(i - iii), we now move to a consideration of the court's discretion to grant relief on equitable grounds.

The Supreme Court has observed that in addition to the enumerated factors in Section 36-32-311(a)(11)(A), the trial court may consider "the equity between the parties" in determining an award of retroactive child support. In *In re T.K.Y.*, the Court further observed:

Although [Tenn. Code Ann. § 36-5-101(e)(1)(A)], which governs support awards, provides that "the court shall apply, as a rebuttable presumption, the child support guidelines," it also states that,

If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the

-7-

> parties. Findings that the application of the guidelines
> would be unjust or inappropriate shall state the
> amount of support that would have been ordered
> under the child support guidelines and a justification
> for the variance from the guidelines.

*Id*. (emphasis added). The essence of this language is essentially mirrored in Section 36-2-311(a)(11)(B), recited above, discussing deviation from a presumptive award of full retroactive support in paternity cases.

*In re T.K.Y.* involved a child born from an extramarital affair that the mother had with the biological father. Initially, the biological father agreed to keep the affair and his parentage a secret. Ultimately, the mother confessed to her husband. The husband held the child out as his own. Mother and husband vigorously opposed the biological father's efforts to establish his paternity; they moved to terminate his parental rights and filed restraining orders against him thereby denying him access to his son for four years. Consistent with the relevant statutes and regulations, the trial court set prospective child support and awarded past support back to the date of the child's birth. In modifying the latter award, the Supreme Court found that under the "unique facts" presented, "it would be inequitable to require Mr. P. to pay retroactive support to Mrs. Y. during the time that she and her husband actively prevented Mr. P. from establishing his paternity and taking responsibility for supporting T.K.Y." *Id.,* 205 S.W.3d at 357. In support of its ruling, the Court stated:

> Here, Mr. P. was not adjudicated to be T.K.Y.'s parent until
> September 2, 2003, over four years after Mr. P. initiated his parentage
> petition and nearly six years after the birth of the child. Because Mr.
> P. did not have the benefits or responsibilities flowing from an
> adjudication of parenthood, or the rights flowing from court-ordered
> visitation, his ability to form a parental relationship was entirely
> dependent upon the willingness of Mr. and Mrs. Y. to permit him to
> do so. They vigorously denied him that opportunity. From the time
> that Mr. and Mrs. Y. first petitioned for a restraining order, on
> October 14, 1999, through the date of the juvenile court's first
> decision on March 13, 2002, Mr. P. was prevented from seeing
> T.K.Y., first by the threat of a restraining order and then by the actual
> entry of a restraining order. In addition, Mr. P. was rebuffed in his
> attempt to send the child a birthday gift after he had filed his petition
> to establish parentage. In short, we believe that equity demands that
> Mr. P. be relieved of child-support obligations for this period under
> the unique facts of this case.

*Id*. The Court also rejected the father's position that it should further modify the trial court's decision so as to relieve him of all child support for the period from the time of the child's birth until the first restraining order was filed against him. The Court stated: "Although [the father] acquiesced

in [the mother's] wishes that he cooperate in keeping the affair and T.K.Y.'s true parentage a secret during that time, and that he not pay support, he appears from the record to have been a willing and equal participant in the arrangement." *Id*.

A consideration of the equities in the present case does not lead to the conclusion that Father should be granted similar relief. First, as the trial court recognized, both Mother and Father failed to legitimate the child despite Mother's certainty and Father's near-certainty that the Child belonged to him. The trial court found that one of the reasons Mother did not do so earlier was her desire not to disrupt Father's marriage. In his memorandum of law, Father takes the position that Mother's failure to validate his parentage sooner "was for her own personal reasons." We suspect, however, that Father's marriage was also the reason that he did not confirm his probable parentage. As in *In re T.K.Y.*, it appears that Father was a "willing and equal participant" in the decision not to legitimate the Child earlier. Moreover, there is a complete lack of evidence that Mother ever denied Father access to the Child. On the contrary, Father's interactions with the Child spanned from the time the Child was born until the petition was filed fourteen years later. During that time, Father visited with the Child, went on a few outings with him, and the Child knew Father well enough to call him "Daddy Bobby." Undoubtedly, it was not the ideal parent/child relationship. We cannot conclude, however, that the failure to formally legitimate the Child or, doubt on Father's part as to his parentage, demands equitable relief in the present case.

Father contends that *Taylor v. Robinson*, No. M2006-00109-COA-R3-JV, 2006 WL 1628862, (Tenn. Ct. App. M.S., filed June 5, 2007) is controlling. In that case, the mother filed a paternity suit when the child was 12 years old. Among its findings, the trial court found that the mother's efforts to notify the father of her pregnancy, the existence of the child, or the father's possible parentage were "equivocal at best." *Id*. at *6. Further, the mother had intimate relations with other men around the time that the child was conceived. After the father's paternity was established, the mother sought retroactive child support. The trial court established prospective support, pursuant to the Guidelines, and awarded retroactive support from the time of the filing of the petition but not before. On appeal, this court affirmed the trial court's deviation from the presumptive award of retroactive support. Father in the instant case insists that the factual similarities with those in *Taylor* support the trial court's decision in the present case. We disagree.

We said the following in *Taylor*:

> In any event, the equities between the parties can be considered, regardless of whether Father had reason to believe the child was his. In this case, as in *In re T.K.Y.*, the trial court was obligated to analyze the equities between the parents to determine whether a deviation from the guidelines was warranted.
>
> The proof showed that Father's failure to pay child support during the first twelve years of [the child's] life was primarily due to Mother's failure to file a Petition to determine who the child's father actually

was. Because of her conduct, Father did not have the opportunity to bond with his son and establish a relationship with him. Mother had access to legal counsel for seven of those years, and there was no evidence that Father did anything to intimidate her or prevent her from exercising her rights.

Further, there was uncontradicted testimony that Mother said she delayed filing "because once [the child] turned 12, he could say he didn't want to see his father and [Father] would still have to pay. . . ." Thus, Mother purposely shaped her conduct to prevent the formation of a father-son relationship between [the child] and his father. It would be inequitable to reward her for such conduct.

The proof further showed that during the first twelve years of his life, [the child] was supported by the income provided by Mother's two ex-husbands. Both men had good jobs, and there was no evidence that [the child] ever suffered from lack of material support during that period of time. Mother did not file her petition until she and her second husband divorced and she was single once again. After the petition was filed, Father cooperated fully. He underwent DNA testing, and as soon as his parentage was established he began paying child support. He also acted promptly to provide medical insurance for [the child].

The proof shows that Father is married and works in construction. Aside from supporting his wife and two daughters, he is now paying prospective child support for [the child's] benefit in the amount of $548 per month. His most recent income tax returns show gross taxable income of $ 40,847 in 2004 and $ 37,301 in 2003, with lesser income in prior years. Under all the circumstances discussed above, we agree with the trial court's determination that it would be inequitable to require him to pay retroactive child support to make up for the twelve years during which [Mother] made no attempt to establish his paternity and thus his obligation of support. We therefore affirm the trial court.

*Id*. at * 7-8. As earlier discussed, in the instant case, Father's knowledge of the Child and his possible parentage were never at issue. Further, unlike in **Taylor**, there is no evidence that Mother purposely avoided establishing Father's paternity to prevent the formation of a relationship between Father and the Child. Still, the trial court in the instant case found that the equities between the parties and the best interest of the Child rendered a full award of retroactive support "unjust or inappropriate." On our review of the record, we cannot agree.

-10-

In considering the equities between the parties, the trial court found that Mother's failure to earlier legitimate the Child or to notify her doctor or the hospital of Father's identity left "some doubt" in Father's mind regarding his possible parentage. Further, the court found that the opportunity of a father/child relationship was lost. Ultimately, however, the trial court concluded that both parties were responsible for the failure to legitimate the Child sooner. The trial court found that although Father "knew [the Child] was probably his," he, like Mother, failed to bring the matter to court. In addition, the evidence showed that the Child had some presence in Father's life and vice versa at least until the parties ended their relationship a few years ago. Father regularly visited with the Child, took him on occasional outings, and the Child had always called him "Daddy Bobby."

In our view, the trial court, despite finding both parties responsible for the failure to legitimate the Child earlier, penalized Mother by denying retroactive support for more than 10 of the 14 years that she was responsible for the Child's support. In short, we conclude that the "equity between the parties" in this case does not support a deviation from the presumptive award of support to the date of the Child's birth based on Mother's delay in seeking legitimation and child support. "The mere action of seeking an award of retroactive child support within the time frame permitted by statute cannot render a request for child support either 'unjust' or 'inappropriate.' " *Berryhill v. Rhodes*, 21 S.W.3d at 192.

Next, the trial court found that the best interest of the Child did not favor the presumptive award of retroactive support because the Child received some support from his maternal grandmother and because "[Mother] essentially waived her claim to child support to a degree by her failure to legitimate [the Child]." Again, Mother's failure to legitimate the Child earlier is not a basis to deny full retroactive support. There is a paucity of the evidence before us regarding the degree to which the maternal grandmother provided financial assistance to Mother for the Child's benefit. The trial court found that one of Mother's reasons for the delayed filing of her petition was that "she didn't need the money as long as her mother was alive." According to the approved statement of the evidence, Mother admitted that "[s]he was assisted in caring for [the Child] by her mother from time to time prior to her Mother's death." We know of no authority holding that support by a relative relieves a parent of his/her support obligation. Accordingly, we reject the argument that the maternal grandmother's support – whatever it was, and this is not clear in the record – relieves Father of any portion of his child support obligation.

Lastly, the trial court cited the difficulty of determining the child support arrearage to the date of the Child's birth. Certainly, this is an insufficient reason to award less than the presumptive amount of retroactive support. As with Father's current support obligation, the trial court was required to determine the presumptive full retroactive child support award by application of the step-by-step method set forth in the Guidelines. If necessary, the trial court may direct the parties to supplemental the financial information provided to assist the court in this determination.

The trial court failed to state the amount of support that would have been due if an award back to the date of birth had been made. This was error:

When an award of retroactive support is deemed appropriate by the court, the applicable statutes and regulations include a presumption that the retroactive child support will be awarded from the date of the child's birth in accordance with the child support guidelines. *See* Tenn. Code Ann. § 36-2-311(a)(11)(A); Tenn. Comp. R. & Regs. 1240-2-4-.06(1) (2008). Consequently, if the trial court deviates from the child support guidelines, the statute and regulations mandate that the trial court's decision "shall be supported by written findings in the tribunal's order" explaining the reasons for the deviation and finding specifically that application of the guidelines would be unjust or inappropriate. *See* Tenn. Code Ann. §§ 36-2-311(a)(11)(B), 36-5-101(e)(1)(A); 4 Tenn. Comp. R. & Regs. 1240-2-4-.06(2), -.07(1) (2008).

*State ex rel. Kennamore v. Thompson*, W2009-00034-COA-R3-JV, 2009 WL 2632759, *2 (Tenn. Ct. App. W.S., filed Aug. 27, 2009). As can be seen, in addition to specific written findings, the trial court is required to state in its order the total amount of retroactive support that would have been due had a deviation not been made by the court. *See* Tenn. Code Ann. § 36-5-101(e)(1)(F); Tenn Comp. R. & Regs. 1240-2-4-.06(2). "The guidelines 'are designed to make awards more equitable by providing a standardized method of computation.'" *State ex rel. Irwin v. Mabalot*, M2004-00614-COA-R3-CV, 2005 WL3416293 at *3 (Tenn. Ct. App. M.S., filed Dec. 13, 2005)(quoting *Jones v. Jones*, 930 S.W.2d 541, 543 (Tenn. 1996)). "A support obligation calculated in accordance with the guidelines is rebuttably presumed to be correct." *Id*. (citing Tenn. Code Ann. § 36-5-101(e)(1)(A)). Accordingly, before a court determines that deviation is warranted in a particular case, it must first determine the total amount of support due under the Guidelines. In this case, the total amount of child support retroactive to the date of the child's birth was not included in the order as required.[4] Neither does the trial court's order include "a periodic payment amount

---

[4]Tenn. Comp. R. & Regs. 1240-2-4-.06 provides for the computation and award of retroactive child support in relevant part as follows:

(3) The retroactive support amount shall be calculated as follows, using the Guidelines in effect at the time of the hearing on retroactive support:

(a) For the monthly BCSO, apply the Guidelines in effect at the time of the order, using the Child Support Worksheet. Use the average monthly income of both parents over the past two (2) years as the amount to be entered for "monthly gross income," unless the tribunal finds that there is adequate evidence to support a different period of time for use in the calculation and makes such a finding in its order. Do not include any current additional expenses on the retroactive worksheet. Complete the worksheet for the retroactive monthly amount, and multiply the amount shown on the worksheet as the "Final Child Support Order" times the number of months the tribunal has determined to be the appropriate period for retroactive support.

(b) An additional amount may be added onto the judgment for retroactive support calculated above in subparagraph (a) to account for the ARP's share of amounts paid by the primary residential parent

(continued...)

. . . in addition to any prospective amount of current support, to eliminate the retroactive judgment for support within a reasonable time." Tenn. Comp. R. & Regs. R. 1240-2-4-.06(4).

In the end, we conclude that the evidence preponderates against the trial court's finding and holding that an award of past child support back to the date of the child's birth would be unjust or inappropriate. Moreover, the trial court failed to calculate the full award of retroactive support under the Guidelines or to include in its order a payment by which the arrearage awarded would be paid within a reasonable time, pursuant to the applicable statutes and regulations. We conclude that the court abused its discretion in its limited award of retroactive child support.

V.

Mother also challenges the trial court's judgment with respect to Father's responsibility for the child's dental and orthodontic expenses. As noted, at the hearing Mother introduced without objection an April 2007 letter from the child's orthodontist in which the proposed treatment schedule and fees for the child's braces was explained. In part, the letter advised Mother that active orthodontic treatment was estimated to last 18-24 months at a cost of $5,185; a payment plan was established at $216.04 for 24 months. Mother also introduced a $550.00 bill for extractions that the child underwent in June 2007. Mother asserts that the trial court erred in ordering Father to pay only $1,157 toward the child's braces and no part of the dental bill rather than his pro rata share calculated under the Guidelines. Father responds that the letter indicating the cost of the Child's proposed orthodontic treatment is not a "bill" but simply a contemplated future expense. He contends that Mother submitted "actual bills" for past expenses at the trial and the trial court granted those expenses as requested in full.

As Mother correctly notes, the Guidelines address parental responsibility for a child's uninsured medical expenses. Tenn. Comp. R. & Reg. 1240-2-4-.04(d) provides, in relevant part:

> The child's uninsured medical expenses including, but not limited to, deductibles, co-pays, dental, orthodontic, counseling, psychiatric, vision, hearing and other medical needs not covered by insurance are not included in the basic child support schedule and shall be the financial responsibility of both parents.

<hr>

[4] (...continued)

for childcare, the child's health insurance premium, and uninsured medical expenses over the retroactive period under consideration, and other expenses allowed under Tennessee Code Annotated § 36-2-311.

(c) Add the total amount from subparagraph (a) above to the amount from subparagraph (b) for the total retroactive support due. The retroactive support amount as calculated in subparagraphs (a) and (b) above is presumed to be correct unless rebutted by either party.

(4) A periodic payment amount shall be included in the support order, in addition to any prospective amount of current support, to eliminate the retroactive judgment for support within a reasonable time.

-13-

* * *

>If uninsured medical expenses are not routinely incurred so that a specific monthly amount cannot be reasonably established, a specific dollar amount shall not be added to the basic child support obligation but the court order shall specify that these expenses shall be paid by the parents as incurred according to each parent's percentage of income unless some other division is specifically ordered by the tribunal.

The only relevant exhibits before us are the letter and dental bill. The statement of the evidence notes that at the conclusion of the trial, Mother requested "a judgment for one half of the dental bill and orthodontic bill for the braces submitted to the court. . . ." The trial court's order states that "[Mother] is requesting one half (½) of the cost of [the Child's] orthodontic care or the sum of $1157.00" and awards "$1157.00 in medical/dental bills" without further elaboration. We presume that the trial court considered the amount of expenses the Child had incurred for orthodontic and dental care as of the time of the trial and found that they were properly apportioned 50/50 to each parent. From the limited information provided, we cannot conclude that the evidence preponderates against the trial court's finding.

The trial court's order did not address future uninsured medical expenses under the Guidelines. Since this case is being remanded for a hearing to re-calculate retroactive support, the payment of future uninsured medical expenses can be and should be addressed in the order following the hearing on remand.

## VI.

The portion of the judgment of the trial court pertaining to retroactive child support is vacated and this case is remanded for a determination, pursuant to the applicable statutes and regulations, of the total amount of retroactive support owed by Father back to the Child's date of birth. The trial court's order on remand shall also specify Father's obligation for the Child's future uninsured medical expenses. Costs on appeal are taxed to the appellee, B.L.I.

_____
CHARLES D. SUSANO, JR., JUDGE

-14-