IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 25, 2010 Session

## SAMUEL WESLEY WOODS v. TRACY DEAN TIDWELL

**Appeal from the Chancery Court for Lawrence County**
**No. 13887-08      Robert Lee Holloway, Jr., Judge**

---

**No. M2009-01972-COA-R3-CV - Filed May 3, 2011**

---

Mother appeals both the trial court's refusal to approve an agreed upon parenting arrangement reached between the parents and the trial court's finding that father should be designated the primary residential parent. Finding the trial court was required to make an independent determination of custody issues and that the court acted within its discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Ryan P. Durham, Lawrenceburg, Tennessee, for the appellant, Tracy Dean Tidwell (now Watkins).

James R. Frazier, Lawrenceburg, Tennessee, for the appellee, Samuel Wesley Woods.

### OPINION

In April of 2008, Father petitioned the court to be named primary residential parent to the parties' child born out-of-wedlock in 2000. Prior to Father's petition, he had regular visitation but no court had previously made a custody designation, named either party primary residential parent, or entered a parenting plan.[1] Mother responded with a counterclaim asking that she be named the child's primary residential parent.

---

[1] Although not a part of the record, the parties agree that Father's paternity had been established by a juvenile court order in March of 2001. According to the trial court, that order provided that the parties agreed that they would work out "fair support and visitation."

In June of 2008, the parties agreed to a temporary custody resolution to be in effect during the pendency of the action wherein the child would reside with each parent on alternate weeks. The parties entered into mediation which resulted in a written agreement on custody that was approved and executed by both parties and their counsel on October 10, 2008 ("Agreement"). The Agreement named Mother as primary residential parent. The Agreement provided that the child would be with Father on alternating weekends during the school year, spring and fall breaks, some holidays, and on alternating schedule during the summer. The Agreement contained the following provision which the parties refer to as the contingency provision.

> The entire shared parenting arrangement is contingent on the following and the parties agree that the schedule would revert to a week to week schedule if the contingency is not met: If mother divorces or separates <u>and</u> moves to Lawrence or Maury County. Parties resume week to week schedule. (emphasis original).

Later, Father refused to sign the documents that would reflect the terms of the Agreement into a formal parenting plan.

Mother filed a motion to enforce the Agreement. The parties then agreed to mediate whether the Agreement should be enforced. Thereafter, new allegations concerning inappropriate behavior were made between the parents.

A hearing was held on issue of custody and visitation on July 21, 2009. As a result, on July 28, 2009, the trial court issued an order naming Father the primary residential parent and Mother the alternate residential parent. The trial court found that the Agreement would not be enforced on the grounds that the contingency was not met.

Thereafter, on August 5, 2009, Mother filed a motion to alter or amend the trial court's July 28, 2009 order, including as a ground the trial court's failure to enforce the Agreement. The trial court denied Mother's request. This appeal by Mother ensued.

On appeal, Mother raises two issues. First, she argues that the trial court erred by refusing to enforce the Agreement. Second, Mother argues that the trial court erred in its best interest analysis under Tennessee Code Annotated § 36-6-106 that resulted in Father's designation as primary residential parent.

# I. THE STANDARD OF REVIEW IN CUSTODY CASES

Our review of findings of fact in cases of child custody or parenting plans is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d 714, 732 (Tenn. 2005); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). Questions of law in civil cases are reviewed *de novo* with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.3d 87, 91 (Tenn. 1993).

# II. ENFORCEMENT OF AGREEMENT

The trial court declined to enforce the parties' Agreement on the ground that the contingency nullified it. The court then heard evidence and arrived at a parenting arrangement that varied from the parties' Agreement. On appeal, Mother argues that the trial court erred when it failed to enforce the Agreement.

Mother's argument, however, presupposes that the trial court would have been required to enforce the Agreement absent its interpretation of the contingency language. This presupposition is clearly in error. By statute, courts are required to make custody determinations. Tenn. Code Ann. § 36-6-101(a); Tenn. Code Ann. § 36-6-106(a); Tenn. Code Ann. § 36-6-404 (c)(1) and (3). Courts have wide discretion in determining a parenting arrangement, and that decision is to be made on the basis of the child's best interest. Tenn. Code Ann. § 36-6-106(a). Consequently, the issue in devising parenting arrangement is not whether the parties have agreed or the interpretation of any such agreement. Instead, the issue is what arrangement is in the child's best interest considering all relevant factors, including those described in Tenn. Code Ann. § 36-6-106(a). The paramount consideration in a custody case is always the welfare and best interest of the parties' minor children. Tenn. Code Ann. § 36-6-106(a); *Lentz v. Lentz,* 717 S.W.2d 876, 877 (Tenn. 1986)*; Ruyle v. Ruyle*, 928 S.W.2d 439, 441 (Tenn. Ct. App. 1996); *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Courts are not required to approve or enforce private agreements regarding parenting arrangements for children, unlike many other types of settlement agreements.

After hearing the evidence, the trial court arrived at a custody arrangement it found to be in the child's best interest that was significantly different from the custody arrangement in the Agreement. By refusing the arrangement previously suggested in the Agreement, the effect of the trial court's custody ruling was that it determined the arrangement in the Agreement was not in the child's best interest under the factors in Tenn. Code Ann. § 36-6-106. Consequently, the issue of whether or not a contingency was or was not met in the

Agreement is not determinative. The trial court's refusal to enforce the Agreement herein was not in error.

### III.  BEST INTERESTS

Mother also argues on appeal that the trial court erred by finding that it was in the child's best interest for Father to be the primary residential parent.

We are mindful that "[t]rial courts are vested with wide discretion in matters of child custody" and that "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Koch*, 874 S.W.2d at 575. Also, because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves," appellate courts "are reluctant to second-guess a trial court's decisions." *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997); *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997); *Gaskill v. Gaskill,* 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996).

Comparative fitness is the standard that our courts normally apply when determining whether it is in the best interest of a child to place him or her in the primary custody of one legal parent or the other. *Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999); *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). "Fitness for custodial responsibilities is largely a comparative matter. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others." *Bah*, 668 S.W.2d at 665-66 (citing *Edwards v. Edwards,* 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973)).

Mother argues the paternity order set the first parenting arrangement and there had been no material change in circumstances to warrant a revision. The trial court made reference to the paternity order wherein "the parties agreed . . . that they will make every reasonable effort to work out support and visitation." We find Mother's argument unpersuasive for two reasons. First, this language in the paternity order is not a determination by the court of a parenting arrangement. In effect, there was no final order in effect. Second, even if the paternity order is final by the court, since the parties are unable to agree, a clear material change of circumstance has occurred.

Mother also argues the trial court erred by failing to make "specific findings" regarding the factors in Tenn. Code Ann. § 36-6-106(a). Mother does not argue the trial court erred in its findings, only that the findings were not specific to Tenn. Code Ann. § 36-6-106(a).

To help our courts determine the best interest of a child in a custody proceeding, the General Assembly has set out a non-exclusive list of factors that courts are directed to consider when making such a determination. These include:

(1) The love, affection and emotional ties existing between the parents and child;
(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . ;
(4) The stability of the family unit of the parents;
(5) The mental and physical health of the parents;
(6) The home, school and community record of the child;
(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . . ;
(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a).[2]

_____

[2]In 2005, our legislature enacted a statute that requires the creation of a permanent parenting plan, which must be incorporated into "any final decree or decree of modification in an action for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child." Tenn. Code Ann. § 36-6-404. Such a parenting plan must include the creation of a "residential schedule," and the designation of a "primary residential parent," meaning "the parent with whom the child resides more than fifty percent (50%) of the time." Tenn. Code Ann. § 36-4-402(4). The legislature also set out a list of factors for the courts to consider in determining which parent should be designated as the primary residential parent.

As a practical matter, the designation of a "primary residential parent" is functionally equivalent to an award of custody, and the factors set out in Tenn. Code Ann. § 36-4-404(9)(b) are similar, but not quite

(continued...)

-5-

While the trial court is obligated to consider all relevant factors in reaching its decision, it is not required to list in its opinions or orders each of those factors, nor is it required to explain how each factor affected its overall determination. *Woods v. Woods*, M2006-01000-COA-R3 -CV, 2007 WL 2198110, at *2 (Tenn. Ct. App. Jul. 26, 2007) (no Tenn. R. App. P. 11 application filed); *Matlock v. Matlock,* M2004-01379-COA-R3-CV, 2007 WL 1452691, at *5 (Tenn. Ct. App. May 16, 2007) (no Tenn. R. App. P. 11 application filed).

The trial court did not find that either parent posed a problem or threat for the child and noted that both parents had good support from parents, siblings and other relatives. The child had spent considerable time with both parents since birth, including times when each parent had the child on alternating weeks. The factors that the court clearly found favored Father were stability and continuity. Father's home situation was found to be more stable than Mother's situation and with Father the child could stay in the same school he had attended for four years. The court's order discussed this factor with the most specificity as it was the factor that distinguished the parents. We find no error by the trial court on this point. The evidence does not preponderate against the trial court's decisions and the trial court acted well within the discretion granted it.

The trial court is affirmed. Costs of appeal are taxed to Tracy Dean Tidwell for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[2](...continued)
identical to, the factors set out in Tenn. Code Ann. § 36-6-106(a). The parties never married, so there was no divorce or legal separation, and the provisions of Tenn. Code Ann. § 36-4-404 were never triggered. We will accordingly apply the factors set out in Tenn. Code Ann. § 36-6-106(a) in our analysis.