IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2019

## TYLER COLE DEATON v. KATLYN NICOLE WILLIAMS

**Appeal from the Juvenile Court for Madison County**
**No. 57-50-959     Nathan B. Pride, Judge[1]**

---

**No. W2018-00564-COA-R3-JV**

---

This appeal involves a contentious dispute over the designation of the primary residential parent for a child born to the unmarried parties. Having carefully reviewed the voluminous record before us, we reverse the decision of the trial court and designate the mother as the primary residential parent. The case is remanded for entry of a permanent parenting plan consistent with this court's opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, J.J., joined.

Lanis L. Karnes and Jennifer C. Covellis, Jackson, Tennessee, for the appellant, Katlyn Nicole Williams.

David W. Camp, Jackson, Tennessee, for the appellee, Tyler Cole Deaton.

## OPINION

### I.     BACKGROUND

The Child at issue was born out-of-wedlock to Katlyn Nicole Williams ("Mother") and Tyler Cole Deaton ("Father") in March 2016. Mother and Father (collectively "the Parties") had just recently graduated from high school and were residing with their respective parents during the pregnancy. They moved into a "tiny home" in the paternal grandparents' backyard following the birth of the Child. They resided together for

---

[1] Sitting by interchange.

approximately five months before Mother left with the Child to establish her own residence. The Parties agreed to share co-parenting time.

Approximately one month later, on September 22, 2016, Father filed a petition to establish his paternity and to approve his proposed parenting plan in which he sought designation as the primary residential parent. Father alleged that Mother exhibited an unstable lifestyle and was unable to provide for the Child. However, he sought nearly equal co-parenting time. In an amended petition, Father requested 285 days of co-parenting time to Mother's 80 days, alleging that she exhibited a lack of attentive care as evidenced by the Child's injuries while with her, namely the Child burned himself on a flatiron for styling hair on November 15, 2016, and again on December 22, 2016.[2] He then filed a second amended petition in which he again proposed nearly equal co-parenting time. Mother agreed that an order establishing Father's paternity was appropriate. She requested designation as the primary residential parent with 255 days of co-parenting time.

During the pendency of the proceeding, the court entered a temporary residential schedule in which the Parties split the week, with Mother exercising four days of co-parenting time from Saturday to Wednesday each week.[3]

The case proceeded to a hearing over the course of three bifurcated days, at which the Parties presented exhaustive testimony establishing their character and critiquing the other's character. A full recital of said testimony is not relevant or necessary to the issue at hand. In sum, Father claimed that Mother exhibited some questionable behavior, to which Mother responded that Father relied on his parents to fulfill his parental role. Nevertheless, the record reflects that the Child was loved and provided for while in the other's care. Both parties were employed at the time of the hearing and had established a residence suitable for the Child. Mother had also exhibited a longstanding ability to care for the Child without assistance and had assumed the role of the primary caregiver. Mother provided that she was the one responsible for scheduling and attending the Child's routine doctor's appointments. She acknowledged that the Child burned himself while in her care but explained that the injuries were accidental and that she sought prompt medical treatment for the second burn. She claimed to have grown and matured since that time. Father agreed that he has not paid child support and has not contributed to the cost of the Child's medical care.

---

[2] The second injury required emergency medical treatment.

[3] Mother refused regular visitation until such time as the court entered an order establishing a schedule. Thereafter, Father took advantage of a clerical error in the court's order and refused to return the Child at the appointed time. The court corrected the error, and Father has since been compliant with the order.

Following the hearing, the court designated Father as the primary residential parent and adopted the proposed parenting plan submitted by Father at the hearing in which Mother's co-parenting time was limited to 80 days. However, the court delayed entry of its adoption of Father's permanent parenting plan until March 12, 2020. The court advised the Parties that until that time, they were to follow the prior order of visitation. The court also tasked Father with remitting payment for the Child's medical expenses previously borne by Mother. The court entered a final order addressing the issue of paternity and child support, finding that Father is the biological father of the Child and determining that an order of child support was unnecessary until entry of the permanent parenting plan in March 2020. This timely appeal followed.[4]

## II.  ISSUE

The sole and dispositive issue raised on appeal is whether the trial court erred in its entry of the permanent parenting plan.

## III.  STANDARD OF REVIEW

"Trial courts have broad discretion in devising permanent parenting plans and designating the primary residential parent." *Burton v. Burton*, No. E2007-02904-COA-R3-CV, 2009 WL 302301, at *2 (Tenn. Ct. App. Feb. 9, 2009). This court reviews such determinations under an abuse of discretion standard. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). A trial court abuses its discretion when it fails to consider the applicable law and relevant facts in reaching its decision. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). A court is said to abuse its discretion "when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).

## IV.  DISCUSSION

Mother requests reversal of the court's decision, arguing that the court failed to conduct the necessary comparative fitness analysis as evidenced by its improper consideration of inappropriate and abolished factors in support of its designation of Father as the primary residential parent. Father responds that the court did not err in its designation of him as the primary residential parent and adoption of his proposed plan, set to begin in March 2020.

---

[4] During the pendency of this appeal, Mother filed a motion to ascertain the status of the case. Her motion is rendered moot by the filing of this court's opinion.

Pursuant to Tennessee Code Annotated section 36-6-404(a), any final decree in an action for separate maintenance involving a minor child shall incorporate a permanent parenting plan, defined in Tennessee Code Annotated section 36-6-402(3) as "a written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule, as well as an award of child support[.]" The trial court is charged with determining a residential schedule, which defines one party as the primary residential parent and designates in which parent's home the child will reside on given days during the year. Tenn. Code Ann. § 36-6-402(5).

Unless otherwise prohibited by Tennessee Code Annotated section 36-6-406, in setting the residential schedule, the trial court is directed to conduct a best interest analysis based upon the factors found in section 36-6-106(a)(1)-(15). Tenn. Code Ann. § 36-6-404. These factors include:

(1)    The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)    Each parent's [] past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent [] to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent [] denying parenting time to either parent in violation of a court order;

(3)    Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)    The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)    The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)     The love, affection, and emotional ties existing between each parent and the child;

(7)     The emotional needs and developmental level of the child;

(8)     The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .

(9)     The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)    The reasonable preference of the child if twelve (12) years of age or older. . . . ;

(14)    Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a)(1)-(15). Although the court was obligated to consider the applicable statutory factors, "the statute does not require a trial court, when issuing a memorandum opinion or final judgment, to list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination." *Burnette v. Burnette*, No. E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 (Tenn. Ct. App. July 23, 2003).

Here, the trial court found, in pertinent part, as follows:

The Court's decision is controlled by Tennessee Code Annotated [section] 36-6-106. Those factors that the Court can consider in reference to Child Custody and ultimate parental parenting are as follows:

a. Child's Best Interest
b. Child's Preference
c. Parental Rights Doctrine
d. Tender Years Doctrine
e. Parental Fitness
f. Parental Morals
g. Custodial Fitness (Health and Age)
h. Financial Advantages
i. Physical Surroundings
j. Religious Beliefs
k. Sex of the Child
l. Continuity of Placement

* * *

[T]he Court notes that the financial advantages appear to be greater for [Father]. The Court notes that physical surrounding that will be in the best interest of the [C]hild preponderate in favor of [Father]. *The Court finds that the sex of the [C]hild preponderates in favor of [Father].* The Court notes that in terms of custodial fitness (health & age) that both parties are equally adequate. Unfortunately, they are both young people, who are growing themselves at this time. The Court understands as young parents they have things that they wish to do, friends that they wish to be with, goals that they wish to achieve, but at the same time, raising a two year old child [who] deserves nothing but the best from both of them.

The Court then based upon these factors, must consider parental fitness. The Court finds that both parties [are] of good moral standing. Both attend church, both work[] hard, [Mother] appears to have more friends than [Father], but he apparently spends more time with his parents. The Court further notes that the paternal grandparents appear to be meddling grandparents, but does not believe that this is an adverse factor. The support staff of [Father] appears to be more stable and structured than [Mother]. Unfortunately, the Court notes that the household of [Mother] is still the same environment[] in which the [C]hild sustained the burns. The Court notes that the [C]hild is now a toddler and that his ability to be mobile and now place himself potentially in the situation of coming into

contact with other devices that could be worse than the curling iron that caused the initial burns. The Court notes that there was very little testimony as to child proofing of [Mother's] household and this raises significant concern to the Court and to his ultimate decision.

(Emphasis added.). The court then designated Father as the primary residential parent and adopted his proposed parenting plan submitted at the hearing.

First, we hold that the court's reference to the "tender years doctrine" and consideration of the Child's sex in relation to Father's was a legal error. "Tennessee law no longer recognizes the 'tender years doctrine' — a presumption that mothers in general are better suited to be primary residential parents than fathers." *Kelly v. Kelly*, 445 S.W.3d 685, 695 (Tenn. 2014). Moreover, Tennessee Code Annotated section 36-6-101 provides as follows:

> It is the legislative intent that the gender of the party seeking custody shall not give rise to a presumption of parental fitness or cause a presumption or constitute a factor in favor or against the award of custody to such party.

The court clearly favored Father based upon his shared gender with the Child. Next, we note that the court also failed to consider at least two factors that weigh in favor of Mother, namely her performance of the majority of the parenting responsibilities and her status as the primary caregiver. While we share the court's concern with the Child's injuries while in Mother's care, we acknowledge that Mother sought medical treatment when necessary and has expressed remorse. Lastly, we believe the court failed to consider the importance of continuity in the Child's life and the length of time in which he has lived in a stable, satisfactory environment. The Parties have shared co-parenting time since the Child's birth without major incident, albeit Mother has exercised more time than Father. The court's order permits the continuance of this arrangement until a date certain, when the Child attains the age of four years old. No reasoning was provided for this future change in the residential schedule and none is apparent from the record.[5]

In consideration of the foregoing, we reverse the court's designation of Father as the primary residential parent and designate Mother in his stead. We remand for entry of a permanent parenting plan in which Mother shall exercise 183 days of co-parenting time to Father's 182 days. We also direct entry of a child support order in favor of Mother.

---

[5] The record reflects that Father evidenced intent to move to a different county in the near future; however, we do not believe this supports the court's future designation of him as the primary residential parent. Father may petition the court for a change in the residential schedule if he believes that his living arrangement necessitates a change in the schedule.

## V.     CONCLUSION

We reverse the decision of the trial court and remand for further proceedings consistent with this opinion.  Costs of the appeal are taxed to the appellee, Tyler Cole Deaton.

_____
JOHN W. McCLARTY, JUDGE